1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 05, 2023

SEAN F. McAVOY, CLERK

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

DAVI F. V.,

8

                         Plaintiff,

9

    v.

10

COMMISSIONER OF SOCIAL
SECURITY,

11

                    Defendant.

12

NO:  2:22-CV-145-RMP

ORDER DENYING PLAINTIFF'S
BRIEF AND GRANTING
DEFENDANT'S BRIEF

13

      BEFORE THE COURT, without oral argument, are briefs from Plaintiff Davi

14

F. V.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the

15

"Commissioner"), ECF No. 12.  Plaintiff seeks judicial review, pursuant to 42

16

U.S.C. §§ 405(g), of the Commissioner's denial of his claim for Social Security

17

Income ("SSI") under Title XVI of the Social Security Act (the "Act").

18

19

20

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and middle and last initials.

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 1

Having considered the parties' briefs, Plaintiff's reply, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI on approximately July 30, 2018, alleging a disability onset date of June 1, 2018. Administrative Record ("AR")[2] 19, 333–41.  Plaintiff was 29 years old on the alleged onset date and asserts that he is unable to work due to anxiety; depression; a personality disorder; obesity, and a skin disorder on his thighs.  ECF No. 10 at 2; *see also* AR 369.  Plaintiff's claims proceeded to a hearing before Administrative Law Judge ("ALJ") Caroline Siderius, who issued an unfavorable decision on July 22, 2020.  AR 156–65.  On December 9, 2020, the Appeals Council vacated the ALJ's decision and remanded the case to ALJ Siderius to provide "an adequate evaluation of the medical expert's testimony," specifically whether the ALJ accepted the medical expert Dr. Stephen Rubin's opinion that Plaintiff's return to work would result in two or more days absent from work each month.  AR 171–72.  The Appeals Council also noted that the ALJ had not

---

[2] The Administrative Record is filed at ECF No. 6.

explained why she did not accept Dr. Rubin's marked limitation in social

functioning and instead found Plaintiff moderately limited in that area.  AR 171.

Following the Appeals Council's remand, Plaintiff submitted additional

medical evidence, and, on April 12, 2021, Plaintiff appeared for a hearing on remand

held telephonically by ALJ Siderius from Spokane, Washington.  AR 71, 98–127,

907–1028.  Plaintiff was present and represented by attorney David Lybbert.  AR

100.  The ALJ heard from medical expert testimony Jay Toews, Ed.D., vocational

expert ("VE") Daniel McKinney, and Plaintiff.  AR 102–26.  ALJ Siderius issued an

unfavorable decision on April 28, 2021.  AR 19–30.

### *ALJ's Decision*

Applying the five-step evaluation process, ALJ Siderius found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since July

30, 2018, the application date.  AR 21 (citing 20 C.F.R. § 404.971 *et seq.*).

**Step two:** Plaintiff has the following severe impairments: anxiety, depression,

obesity, and degenerative disc disease.  AR 21 (citing 20 C.F.R. § 416.920(c)).  The

ALJ further found that, although she had previously found that Plaintiff had a severe

personality disorder based on the testimony of Dr. Rubin at the first hearing, Dr.

Toews did not assess Plaintiff with a personality disorder, "and the evidence of

record does not support such a disorder as a medically determinable impairment."

AR 21–22.  The ALJ further found that PTSD is not a medically determinable

impairment, based on the testimony of Dr. Toews.  AR 22.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or

combination of impairments, that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

416.920(d), 416.925, and 416.926).  AR 22.  With respect to Plaintiff's physical

impairments, the ALJ memorialized that she considered listings 1.15 (disorders of

the skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (lumbar

spinal stenosis causing cauda equina compression).  AR 22.  The ALJ also

considered whether Plaintiff's functional limitations resulting from obesity meet or

medically equal a listing and found that "no medical source opined that claimant's

obesity medically equaled a listing on its own or exacerbated her [sic] other

impairments to the point that they medically equaled a listing. The undersigned

cannot assume otherwise."  AR 22 (citing Social Security Ruling ("SSR") 19-2).  In

assessing the severity of Plaintiff's mental impairments, the ALJ considered listings

12.04 and 12.06 and whether Plaintiff satisfied the "paragraph B" criteria.  AR 22–

23.  The ALJ found that Plaintiff is mildly limited in: understanding, remembering,

or applying information and concentrating, persisting, or maintaining pace.  AR 22–

24.  The ALJ found Plaintiff moderately limited in: interacting with others and in

adapting or managing.  AR 23–24.  Therefore, the ALJ found that Plaintiff does not

exhibit at least two marked limitations or one extreme limitation in a broad area of functioning.  AR 24.  The ALJ also memorialized her finding that the evidence in Plaintiff's record fails to satisfy the "paragraph C" criteria.  AR 24.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff can perform medium work, as defined in 20 C.F.R. § 416.967(b), except that:

> he could sit up to eight hours per day; he could stand and/or walk up to one hour at a time before taking a five-minute break; he could stand and/or walk up to four hours in an eight-hour day; he could occasionally crouch, kneel, stoop, crawl, and climb ladders, ropes, or scaffolds; he could have occasional, brief contact with co-workers and no contact with the public; and he could not tolerate more than ordinary production requirements.

AR 24.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 25.

**Step four:** The ALJ found that Plaintiff has no past relevant work.  AR 29 (citing 20 C.F.R. § 416.965).

1    **Step five:** The ALJ concluded that Plaintiff was not under a disability, as

2    defined by the Act, from September 1, 2018, through the date of the decision.  AR

3    1727 (citing 20 C.F.R. §§ 404.1520(f) and 416.920 (f)).

4         Plaintiff sought review of the ALJ's decision in this Court.  ECF No. 1.

5                                    **LEGAL STANDARD**

6    ***Standard of Review***

7         Congress has provided a limited scope of judicial review of the

8    Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

9    Commissioner's denial of benefits only if the ALJ's determination was based on

10   legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

11   993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

12   determination that a claimant is not disabled will be upheld if the findings of fact are

13   supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

14   1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

15   scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

16   1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

17   1989).  Substantial evidence "means such evidence as a reasonable mind might

18   accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

19   401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

20   [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

21

1    *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the

2    record, not just the evidence supporting the decisions of the Commissioner.

3    *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

4         A decision supported by substantial evidence still will be set aside if the

5    proper legal standards were not applied in weighing the evidence and making a

6    decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

7    1988).  Thus, if there is substantial evidence to support the administrative findings,

8    or if there is conflicting evidence that will support a finding of either disability or

9    nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

10   812 F.2d 1226, 1229–30 (9th Cir. 1987).

11        ***Definition of Disability***

12        The Act defines "disability" as the "inability to engage in any substantial

13   gainful activity by reason of any medically determinable physical or mental

14   impairment which can be expected to result in death, or which has lasted or can be

15   expected to last, for a continuous period of not less than 12 months."  42 U.S.C. §

16   423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under

17   a disability only if the impairments are of such severity that the claimant is not only

18   unable to do their previous work, but cannot, considering the claimant's age,

19   education, and work experiences, engage in any other substantial gainful work

20   which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Thus, the

21

definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R § 416.920. Step one determines if they are engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

1    If the impairment is not one conclusively presumed to be disabling, the

2  evaluation proceeds to the fourth step, which determines whether the impairment

3  prevents the claimant from performing work that they have performed in the past.  If

4  the claimant can perform their previous work, the claimant is not disabled.  20

5  C.F.R. §§ 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is

6  considered.

7    If the claimant cannot perform this work, the fifth and final step in the process

8  determines whether the claimant is able to perform other work in the national

9  economy considering their residual functional capacity and age, education, and past

10  work experience.  20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137,

11  142 (1987).

12    The initial burden of proof rests upon the claimant to establish a prima facie

13  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

14  Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

15  is met once the claimant establishes that a physical or mental impairment prevents

16  them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The

17  burden then shifts, at step five, to the Commissioner to show that (1) the claimant

18  can perform other substantial gainful activity, and (2) a "significant number of jobs

19  exist in the national economy" that the claimant can perform.  *Kail v. Heckler*, 722

20  F.2d 1496, 1498 (9th Cir. 1984).

21

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.     Did the ALJ erroneously assess the medical source opinions?

2.     Did the ALJ erroneously discount Plaintiff's subjective complaints?

3.     Did the ALJ fail to meet her burden at step five?

### *Medical Source Opinions*

Plaintiff argues that the ALJ could not have relied only upon the opinion of non-examining medical expert Dr. Toews to discredit or ignore the opinion of examining medical source Dr. Rubin. ECF No. 10 at 14–15. Plaintiff asserts that he shows in the introductory section of his opening brief that "Dr. Toews' assumptions and review" were in error. *Id.* at 15. In introducing the relief that he requests, Plaintiff asserts that while the ALJ found persuasive Dr. Toews' opinion that no mental condition causes limitations for Plaintiff, Plaintiff's position is that Dr. Toews based his opinion on three invalid assumptions. ECF No. 10 at 6. First, Plaintiff argues that Dr. Toews stated that Plaintiff's mental status examination findings were normal but "admitted" on cross-examination that his mental status examinations indicated that Plaintiff presented with a "flat affect" and a "disheveled" appearance. ECF No. 10 at 6 (citing nothing). Second, Plaintiff argues that Dr. Toews incorrectly opined that psychological examiner Thomas Genthe, PhD's assessment lacked reliability because the personality inventory testing that Dr. Genthe performed was invalid. *Id.* at 18. Plaintiff counters that Dr. Toews

1    admitted that Dr. Genthe's interpretation should be "limited," not completely invalid

2    because Plaintiff left twenty percent of the personality inventory blank and Dr.

3    Genthe did not follow up as to the reason for not responding to the questions.  *Id.* at

4    18 (citing AR 104, 112–13).  Third, Plaintiff also asserts that Dr. Toews erroneously

5    decided to ignore Plaintiff's symptoms on the basis that Plaintiff did not take the

6    Wellbutrin that was prescribed to him because Plaintiff testified that he did not take

7    Wellbutrin because of severe side effects and that Plaintiff took the alternative

8    medication that was prescribed.  *Id.* at 7 (citing nothing).

9        The Commissioner responds that Plaintiff does not adequately develop his

10   argument with respect to alleged error in treatment of the medical source opinions

11   and does not provide citations to the record.  ECF No. 12 at 6 (citing ECF No. 10;

12   *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 873 (9th Cir. 2001), *aff'd sub nom.*

13   *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721 (2003); *Indep. Towers of Wash.*

14   *v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly

15   admonished that we cannot manufacture arguments for an appellant and therefore we

16   will not consider any claims that were not actually argued in appellant's opening

17   brief.") (internal quotation omitted)).  The Commissioner further maintains that the

18   ALJ "thoroughly analyzed all the opinion and prior administrative medical finding

19   evidence, under the applicable regulations, and provided far more than the 'mere

20   scintilla' of support, with extensive citations to the record, necessary to meet the low

21

threshold of the substantial evidence standard of review." *Id.* at 11–12 (citing

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).  The Commissioner argues that,

on remand from the Appeals Council, the ALJ "fully addressed Dr. Rubin's opinion

regarding both Plaintiff's absenteeism, and his social and other mental functional

abilities." *Id.* at 12 (citing AR 22–26).  The Commissioner asserts that the ALJ

relied on substantial evidence in reasoning that Plaintiff's social anxiety symptoms

did not rise to the level to which Dr. Rubin opined in light of Plaintiff's activities

and presentation to examining providers, as well as the other medical source

opinions. *Id.*

The regulations that took effect on March 27, 2017, provide a new framework

for the ALJ's consideration of medical opinion evidence, and require the ALJ to

articulate how persuasive he finds all medical opinions in the record, without any

hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

2017).  Instead, for each source of a medical opinion, the ALJ must consider several

factors, including supportability, consistency, the source's relationship with the

claimant, any specialization of the source, and other factors such as the source's

familiarity with other evidence in the claim or an understanding of Social Security's

disability program.  20 C.F.R. § 416.920c(c)(1)-(5).

1       Supportability and consistency are the "most important" factors, and the ALJ

2    must articulate how he considered those factors in determining the persuasiveness of

3    each medical opinion or prior administrative medical finding.  20 C.F.R. §

4    416.920c(b)(2).  With respect to these two factors, the regulations provide that an

5    opinion is more persuasive in relation to how "relevant the objective medical

6    evidence and supporting explanations presented" and how "consistent" with

7    evidence from other sources the medical opinion is.  20 C.F.R. § 416.920c(c)(1).

8    The ALJ may explain how he considered the other factors, but is not required to do

9    so, except in cases where two or more opinions are equally well-supported and

10   consistent with the record.  20 C.F.R. § 416.920c(b)(2), (3).  Courts also must

11   continue to consider whether the ALJ's finding is supported by substantial evidence.

12   *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to

13   any fact, if supported by substantial evidence, shall be conclusive . . . .").

14       Prior to revision of the regulations, the Ninth Circuit required an ALJ to

15   provide clear and convincing reasons to reject an uncontradicted treating or

16   examining physician's opinion and provide specific and legitimate reasons where the

17   record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654

18   (9th Cir. 2017).  However, the Ninth Circuit has held that the Social Security

19   regulations revised in March 2017 are "clearly irreconcilable with [past Ninth

20   Circuit] caselaw according to special deference to the opinions of treating and

21

1    examining physicians on account of their relationship with the claimant." *Woods v.*

2    *Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22,

3    2022).  The Ninth Circuit continued that the "requirement that ALJs provide

4    'specific and legitimate reasons' for rejecting a treating or examining doctor's

5    opinion, which stems from the special weight given to such opinions, is likewise

6    incompatible with the revised regulations." *Id*. at *15 (internal citation omitted).

7         Plaintiff applied for SSI on approximately July 30, 2018.  AR 15, 234–48.

8    Accordingly, as Plaintiff acknowledges is appropriate in his reply, the Court refers to

9    the standard and considerations set forth by the revised rules for evaluating medical

10   evidence.  *See* ECF No. 13 at 7.

11        In formulating Plaintiff's RFC, the ALJ considered the persuasiveness of Dr.

12   Rubin's testimony at the first hearing that Plaintiff likely would be absent more than

13   two days per month if he returned to work.  AR 25.  The ALJ found that Dr. Rubin's

14   opinion was not supported by objective medical evidence or by Plaintiff's "reports

15   of activity, his presentation to examining providers, and provider opinions generally

16   indicate that his anxiety symptoms do not rise to the level opined by Dr. Rubin."

17   AR 26.  The ALJ noted that Dr. Genthe opined in 2018 and 2019 that Plaintiff was

18   "unlikely to function adequately in a work setting until his psychological symptoms

19   have been managed more effectively."  AR 26.  Dr. Genthe also rated Plaintiff as

20   markedly limited in three or four of thirteen categories of basic work activity.  AR

21

26.  The ALJ found Dr. Genthe's opinion inconsistent with Dr. Genthe's own observations of Plaintiff and with the findings of Plaintiff's counselor "who noted in February 2019 that he presented with a positive mood and had significantly increased his social activities to an almost daily basis."  AR 26 (citing AR 551, 772). The ALJ further considered the additional medical expert testimony that she received from Dr. Toews at the second hearing and found the majority of Dr. Toews' opinion persuasive.  AR 28.  Specifically, the ALJ reasoned that Dr. Toews' opinion that Plaintiff should have no more than superficial interaction with the public was persuasive because Dr. Toews "had the opportunity to review all the evidence of record, he provided a thorough explanation of the records he reviewed and how they shaped his opinion, he has specialized expertise in clinical psychology, and he is familiar with Social Security regulations."  AR 28.  The ALJ found that Dr. Toews' testimony that Plaintiff could perform the job duties of someone who checks produce in the back of a grocery store was not persuasive because Dr. Toews is not a vocational expert.  AR 28.

Plaintiff challenges the ALJ's finding that the opinions of Drs. Rubin and Genthe were not persuasive and correspondingly argues that the ALJ should not have relied on the opinion of Dr. Toews.  ECF No. 10 at 5–7, 14–15.  Plaintiff cites to nothing in the record in his argument alleging error by the ALJ in the treatment of the medical source opinions and instead refers the Court back to Plaintiff's recitation

of the background of the case.  *See* ECF No. 10 at 14–15.  In Plaintiff's reply,

Plaintiff's arguments are not separated into distinct bases for relief, but instead

consist of a conglomerated argument of how the ALJ allegedly weighed the

evidence incorrectly and did not address the basis for the Appeals Council's remand.

*See* ECF No. 13.  Even piecing Plaintiff's arguments together and giving Plaintiff

the benefit of the doubt regarding whether the arguments are supported by the

record, Plaintiff's assertion of error amounts to a reinterpretation of the record and

asks this Court to substitute its judgment for that of the agency.  This is not the

Court's role in a Social Security disability benefits appeal.  *Ahearn v. Saul*, 988 F.3d

1111, 1115 (9th Cir. 2021).

Rather, the Court looks to the factors considered by the ALJ, particularly

supportability and consistency, and whether those factors were supported by

substantial evidence.  *See* 20 C.F.R. § 416.920c.  In discounting Dr. Rubin's opinion

that Plaintiff is markedly limited in interacting with others and may miss more than

two days per month, the ALJ cited to evidence that Plaintiff presented to treating

providers with mild symptoms and admitted to a provider that it was his "choice" to

isolate in his room to "'engross' himself in his gameplay and watch Disney movies

associated with the game."  AR 26, 749–50.  The ALJ also cited evidence that

Plaintiff was able to socialize with friends and attend social occasions, including a

nephew's birthday party and an event at which Plaintiff assisted his dad.  AR 26,

543, 755, and 758.  This evidence provides substantial support for the ALJ's determination that the degree of limitation to which Dr. Rubin opined was not supported by the two "most important" persuasiveness factors, supportability and consistency.

Likewise, for Dr. Genthe, the ALJ considered whether Dr. Genthe's opinion was supported by an explanation and objective medical evidence, and cited to evidence indicating that it was not.  AR 26, 551, and 772.  The ALJ further considered whether Dr. Genthe's opinion was consistent with other evidence in the record and cited to Plaintiff's treating counselor's notes that were inconsistent with Dr. Genthe's opinion.  AR 26, 521.

Lastly, the ALJ also cited to substantial evidence in her discussion of why she found Dr. Toews' opinion persuasive, including noting that Dr. Toews was able to review Plaintiff's full record and provided a thorough explanation for how the record supported his opinion. AR 28.

Plaintiff has not shown that the ALJ erred, even assuming that Plaintiff showed that the ALJ could have weighed the medical source opinions differently. Therefore, the Court finds no error on this ground, and grants judgment to Defendant the Commissioner, and denies judgment to Plaintiff, on the same.

/ / /

/ / /

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 17

1

### *Subjective Symptom Testimony*

2      Plaintiff argues that the ALJ provided insufficient reasons for discounting

3 Plaintiff's subjective complaints.  ECF No. 10 at 15.  Plaintiff argues that both his

4 mother and examining medical source Dr. Genthe corroborate the limitations that

5 Plaintiff described.  *Id*.  Plaintiff asserts that the ALJ relied on cherry-picked facts.

6 *Id.* at 16 (no citation to the record).  Plaintiff further argues that the ALJ erroneously

7 relies on Plaintiff's daily activities, including attending family gatherings and

8 playing video games online, when the activities do not consume a substantial part of

9 Plaintiff's day and do not support an inference that Plaintiff can sustain work

10 activity.  *Id.* at 16–17 (no citation to the record).

11      The Commissioner does not address the ALJ's treatment of Plaintiff's

12 subjective statements but discusses Plaintiff's statements in the context of the

13 treatment of medical source opinions and cites the Court to Plaintiff's attendance at

14 family events such as a nephew's birthday party and family holiday gatherings, as

15 well as other social activities like serving as best man in a friend's wedding and

16 attending a barbeque.  ECF No. 12 at 10, 12 (citing AR 26–27, 543, 545, 755, 758,

17 837, and 848).

18      In deciding whether to accept a claimant's subjective pain or symptom

19 testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d

20 1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

21

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so."  *Smolen*, 80 F.3d at 1281.

The ALJ reasoned that Plaintiff's activities as well as his medical records

before and after the date of the remanded decision were inconsistent with the degree

of impairment that Plaintiff claims.  The ALJ cited to substantial evidence in support

of this reasoning, including medical records showing that: Plaintiff reported to a

therapist in August 2018 that his mental health symptoms were "minimal if at all

present most days" and that Plaintiff was uninterested in employment; that Plaintiff

reported to a therapist that his lack of progress toward his mental health goals was

"not because of his symptoms impacting his functioning," but instead because he

was prioritizing his gaming hobby; and Plaintiff ceased therapy in March 2021 after

Plaintiff did not make "significant progress . . . over 30 sessions" and the therapist

had unsuccessfully tried to motivate Plaintiff to try to make changes or identify what

he is willing to do to change his symptoms[.]  AR 623, 627, and 1026.  The Court

finds no error in the ALJ's assessment of Plaintiff's subjective symptom statements.

1    ***Step Five***

2         Plaintiff contends that the ALJ erred at step five because the VE testified in

3    response to a hypothetical that was incomplete due to the ALJ's allegedly improper

4    consideration of the medical opinion evidence and Plaintiff's subjective symptom

5    testimony.  *See* ECF No. 10 at 8.  The ALJ's hypothetical must be based on medical

6    assumptions supported by substantial evidence in the record that reflect all of a

7    claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

8    The ALJ is not bound to accept as true the restrictions presented in a hypothetical

9    question propounded by a claimant's counsel.  *Osenbrock*, 240 F.3d at 1164.  The

10   ALJ may accept or reject these restrictions if they are supported by substantial

11   evidence, even when there is conflicting medical evidence.  *Magallanes v. Bowen*,

12   881 F.2d 747, 756 (9th Cir. 1989).

13        Plaintiff's argument assumes that the ALJ erred in her treatment of Plaintiff's

14   subjective symptom testimony and the medical source testimony in formulating the

15   RFC.  As discussed above, the Court finds no error in the ALJ's assessment of this

16   evidence.  Therefore, the RFC and hypothetical contained the limitations that the

17   ALJ found credible and supported by substantial evidence in the record.  The ALJ's

18   reliance on testimony that the VE gave in response to the hypothetical was proper.

19   *See Bayliss*, 427 F.3d at 1217–18.  The Court grants judgment to the Commissioner

20   on this final ground.

21

1    Lastly, the Court notes that Plaintiff raises in a conclusory manner the

2 allegation that the ALJ failed to "properly evaluate the Mental [sic] conditions

3 affecting the Plaintiff, by failing to look at the record in a 'longitudinal' fashion, as

4 required by Statute [sic][.]"  ECF No. 10 at 2.  However, the Court already

5 determined that the ALJ cited to evidence over the course of Plaintiff's medical

6 record in evaluating the medical source opinions and subjective symptom

7 statements, and the Court finds no fruitful purpose in pursuing this undeveloped

8 issue any further.

9                              **CONCLUSION**

10    Having reviewed the record and the ALJ's findings, this Court concludes that

11 the ALJ's decision is supported by substantial evidence and free of harmful legal

12 error.

13 / / /

14 / / /

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 21

1    Accordingly, **IT IS HEREBY ORDERED** that:

2    1.   Plaintiff's Opening Brief, **ECF No. 10**, is **DENIED**.

3    2.   Defendant the Commissioner's Brief, **ECF No. 12**, is **GRANTED**.

4    4.   Judgment shall be entered for Defendant.

5    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

6    Order, enter judgment for Defendant as directed, provide copies to counsel, and

7    **close the file** in this case.

8    **DATED** December 5, 2023.

9

10                              *s/ Rosanna Malouf Peterson*
                              ROSANNA MALOUF PETERSON
                              Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 22